UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LUIS GARCIA, on behalf of himself and other                    Case No.: 16-cv-5542
similarly situated,                                                         (LTS)

                              Plaintiffs,

              -against-

CLOISTER APT CORP., SIREN MANAGEMENT
CORP., EDEL FAMILY MANAGEMENT CORP.
a/k/a EDEL FAMILY MGT. CORP., FLORENCE
EDELSTEIN, MICHAEL EDELSTEIN, CARINA
LECHTER, HOWARD LANDMAN, JEFFREY
HEIDINGS, ROSA REICHMAN, NIGEL
HENDRICKSON, GAIL GERZETIC, jointly and
severally,

                              Defendants.
-------------------------------------------------------------------X


**EDELSTEIN DEFENDANTS' OPPOSITION TO CLOISTER APT. CORP.'S MOTION
TO DISMISS THE CROSS-CLAIM AGAINST CLOISTER APT. CORP.**


FORCHELLI, CURTO, DEEGAN, SCHWARTZ, MINEO & TERRANA, LLP
*Attorneys for Edelstein Defendants*
The Omni
333 Earle Ovington Blvd., Suite 1010
Uniondale, New York 11553

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

PROCEDURAL BACKGROUND................................................................................ 1

STANDARD OF REVIEW .......................................................................................... 5

ANALYSIS.................................................................................................................... 6

    *I.    The Cloister Defendants have raised a claim for indemnification under the Agreement.....* 6

    *II.    Edelstein Defendants' cross-claim for contractual indemnification against Cloister is not barred by the FLSA and New York Labor Law. ......................................................* 8

        A.    Cloister's Cases Do Not Apply. ..................................................................... 9

        B.    The Indemnification Provisions Are Enforceable. ......................................... 11

    *III.    Cloister Cannot Be Absolved of their Obligations under the FLSA and NYLL.* ............ 11

    *IV.    Edel Family Management is E.F.M. Realty Corp. and remains in existence.* ............... 14

    *V.    The Contract is Not Voided By New York Gen. Obl. L. 5-903.* ......................................... 16

CONCLUSION.............................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amaya v. Garden City Irr., Inc.*,
2011 WL 564721 (E.D.N.Y. Feb. 15, 2011) ....................................................... 9, 11

*Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., In*c.,
652 F. Supp. 2d 463 (S.D.N.Y. 2009) .................................................................. 6

*Bogosian v. All American Concessions*,
2011 WL 4460362 (E.D.N.Y. Sept. 26, 2011)................................................... 8, 9, 11

*Concourse Nursing Home v. Axiom Funding Group*,
279 A.D.2d 271 (1st Dept. 2001) ...................................................................... 17

*Fernandez v. Kinray, Inc.*,
2014 WL 7399303, at *11 (E.D.N.Y. Dec. 30, 2014)............................................ 10

*Flores v. Mamma Lombardis of Holbrook, Inc.*,
942 F. Supp. 2d 274, 278 (E.D.N.Y. 2013) ....................................................... 10, 11

*Guerrero v. Soft Drink & Brewery Workers Union*,
2016 WL 631296 (S.D.N.Y. Feb. 16, 2016) ....................................................... 5

*Gustafson v. Bell Atl. Corp.*,
171 F.Supp. 311 (S.D.N.Y. 2001) ................................................................... 10, 11, 13

*Healthcare I.Q. LLC v. Tsai Chung Chao*,
118 A.D.3d 98 (1st Dept. 2014) ...................................................................... 17

*Herman v. RSR Sec. Servs.,*
172 F.3d 132 (2d Cir. 1999)............................................................................ 9, 10, 11

*Hogeland v. Sibley, Lindsay & Curr Co.*,
42 N.Y.2d 153, 366 N.E.2d 263 (1977) .................................................................. 6

*In re FPSDA I, LLC*,
2012 WL 6681794 (Bankr. E.D.N.Y. Dec. 21, 2012)......................................... 9, 11

*JCL Properties, LLC v. Equity Land Developers, LLC*,
102 A.D.3d 745 (2d Dept. 2013)...................................................................... 15

*Kurek v. Port Chester Hous. Auth.*,
    18 N.Y.2d 450, 223 N.E.2d 25 (1966) ........................................................................... 6

*LaSalle Bank Nat. Assoc. v. Citicorp Real Estate, Inc.*,
    2003 WL 21671812 (S.D.N.Y. July 16, 2003) ................................................... 6, 13

*Nemard Const. Corp. v. Deafeamkpor*,
    21 Misc.3d 320 (Sup. Ct. Bronx Cnty. 2008) ................................................... 15

*Paganas v. Total Maint. Sol., LLC*,
    2016 WL 7048034 (E.D.N.Y. Dec. 5, 2016) ................................................... 9, 11

*Perez v. Reade*,
    2011 WL 96837 (E.D.N.Y. Jan. 11, 2011) ........................................................ 6

*Pfizer Inc. v. McNeil-PPC, Inc.*,
    183 F. Supp. 3d 491 (S.D.N.Y. 2016) ........................................................... 5

**Statutes**

Gen. Obl. L. § 5-901 ........................................................................................ 17

Gen. Obl. L. § 5-903 ............................................................................... 16, 17

Gen. Obl. L. §5-903(2) .................................................................................. 17

## PRELIMINARY STATEMENT

Plaintiff, Luis Garcia ("Plaintiff"), who allegedly worked as a building maintenance employee for the Cloister Apt. Corp. ("Cloister"), a cooperative corporation, filed this action seeking unpaid wages, overtime premiums and penalties for all wages earned from July 11, 2010 until April 15, 2016. Pursuant to the terms of a Management Agreement dated July 30, 2002 (the "Agreement"), to the extent Plaintiff completed any work towards the maintenance of the Premises, he was an employee of the Cloister, and pursuant to the Management Agreement between Cloister and Edel Family Management Corp. ("E.F.M.") d/b/a E.F.M. Realty Corp., Cloister agreed to provide E.F.M. with a defense and indemnify and hold E.F.M. harmless for any judgment that may arise from any litigation arising out of E.F.M.'s maintenance of the Premises.

The Edelstein Defendants respectfully requests that this Court deny the Cloister's motion to dismiss the Edelstein Defendants' cross-claim because the Edelstein Defendants are entitled to indemnification and defense from Cloister pursuant to the terms of the Agreement.

## PROCEDURAL BACKGROUND

On July 14, 2016, Plaintiff commenced an action against Cloister, Siren Management Corp. ("Siren"), E.F.M., Florence Edelstein, Michael Edelstein, Carina Lechter, Jeffery Heidings, Rosa Reichman, Nigel Hendrickson and Gail Gerzetic (collectively "Defendants"), seeking unpaid wages and overtime premiums for work performed at 1793 Riverside Drive, New York, New York from July 11, 2010 to April 15, 2016 under the federal Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Complaint [DE3] at ¶¶3-4.

Plaintiff alleges that he worked as a building service employee at 1793 Riverside Drive, New York, New York (the "Premises"). [DE3] at ¶1. The Premises is owned by Cloister, a

1

cooperative corporation. [DE3] at ¶13. E.F.M. was the managing agent from July 30, 2002 through February 29, 2016. *See* Declaration of Ron Edelstein ("Edelstein Declaration") at ¶ 9.

Florence and Michael Edelstein are officers of E.F.M. [DE3] at ¶¶16-17. Florence and Michael Edelstein were also the partners in 1793 Realty Corp. ("Sponsor"), who sponsored the Offering Plan, pursuant to which the Premises was converted to cooperative ownership.[1] *See* Edelstein Declaration at ¶5.  Pursuant to the terms of the Offering Plan, Florence and Michael Edelstein, as Sponsor, could not indefinitely hold a majority voting interest in the Cloister Board. *Id.* at ¶6; Relevant Portions of the Offering Plan are annexed to the Edelstein Declaration as Exhibit A; copies of amendments to the Offering Plan that were filed with the Attorney's General Offices demonstrating that the Edelstein Defendants held a minority, non-controlling, voting interest during the time period covered by this action are annexed to the Edelstein Declaration as Exhibit B.

According to the amendments to the Offering Plan, which were filed with the New York State Attorney General, the Edelstein Defendants were last listed as holding a controlling interest in the Cloister Board in 1992. *See* Exhibit B. Further, the Board Meeting Minutes from 2002 (Exhibit D), and the offering plan amendments filed from 2005 through 2016 (Exhibit B) all affirmatively state that the Edelstein Defendants (as Sponsor) did <u>not</u> hold a controlling interest in the Cloister Board.

On July 11, 2002, the Cloister Board held a meeting, in which they approved E.F.M. Realty Corp. to act as their managing agent. *See* Edelstein Declaration at ¶8; meeting minutes for the July 11, 2002 meeting are annexed to the Edelstein Declaration as Exhibit E. Florence and Michael Edelstein (who held a minority voting interest) abstained from the vote due to the fact that they were the principles in E.F.M. Realty Corp. *Id.*

---

[1] Relevant portions of the Offering Plan and its amendments are annexed hereto as Exhibit A.

On July 30, 2002, Cloister and E.F.M. Realty Corp. entered into a Management Agreement (the "Agreement"). Florence Edelstein executed the Agreement on behalf of E.F.M. Realty Corp.

When the Agreement was executed, E.F.M. Realty Corp. was, and had been for approximately 15 years prior to that date, the trade name of **E**del **F**amily **M**anagement Corp. *Id.* at ¶7.  When the Agreement was executed, Florence and Michael Edelstein had commenced an action against Sheldon Farber, in the Supreme Court of New York, County of New York, index number 602624/2001, alleging trademark infringement and unfair business practices, for Mr. Farber's incorporation of E.F.M. Realty Corp. with the New York Department of State, in retaliation for an eviction proceeding filed against Mr. Farber. *Id.* at ¶7; Decision and Order of the Hon. Joan A. Madden dated December 7, 2004 annexed to the Edelstein Declaration as Exhibit D.

In the Decision and Order of Joan A. Madden dated December 7, 2004, Judge Madden made a finding that "[f]or the past 15 years [Florence and Michael Edelstein] have managed about 26 real estate properties in New York City under the names E.F.M. Realty Corp. and E.F.M. Management Corp., **with the letters EFM representing Edelstein Family Management.**  (emphasis added). *See* Exhibit D.

Judge Madden further made a finding that "**[i]n July and September 1999, [Sheldon Farber] incorporated E.F.M. Realty Corp**. and E.F.M. Realty Management Corp., respectively. In November 2000, defendant incorporated E.F.M. Management Corp. … **There is no evidence in the record that [Sheldon Farber] used the incorporated entities to conduct business or to provide any services.**" *See* Exhibit D (emphasis added).

From July 30, 2002, up to and including February 29, 2016, E.F.M. acted as the managing agent on behalf of and at the direction of the Cloister Board. *Id.* at ¶9.

Following E.F.M.'s resignation as managing agent, Cloister filed an action in the New York State Supreme Court, New York County against **E**del **F**amily **M**anagement **C**orp. to recover certain records from their former property manager. In support of their request for a preliminary injunction, Cloister alleged that **E**del **F**amily **M**anagement **C**orp. was the managing agent of the Premises since 1986. *See* Exhibit G. In the State Court Action, in the Decision and Order of the Hon. Nancy Bannon, J.S.C. entered August 29, 2016, Judge Bannon found that "[Edel Family Management Corp.] has been retained as [Cloister]'s managing agent." *See* Exhibit F.

Provision 2(a) of the Agreement provides, in relevant part that:

> **2. Services to be performed by Agent.** Agent shall perform the following services:
>
> (a) Cause to be interviewed, screened, employed, subject to [Cloister]'s prior approval, all person necessary to be employed in order to properly maintain and operate the Building. <u>All such employees in or about the Building are hereby declared to be employees of [Cloister] and not of [E.F.M.],</u> **and [Cloister] at its cost and expense shall defend any suit brought against [Cloister] or [E.F.M.] on account of the operation or maintenance of said property…and [Cloister] shall hold harmless and fully indemnify [E.F.M.] for any loss to [E.F.M.] on account thereof**. (Emphasis added).

Provision 5 of the Agreement provides, in relevant part that:

> **[Cloister] will indemnify [E.F.M.] against and hold [E.F.M.] harmless from: (a) any liability, damages, costs and expenses (including reasonable attorney's fee) sustained or incurred for injury to any person or property in, about and in connection with the Building, from any cause whatsoever**, unless such injury shall be caused by [E.F.M.]'s own willful misconduct or whatsoever, unless such injury shall be caused by [E.F.M.]'s own willful misconduct or failure to comply with its obligations hereunder, (b) any liability, damages, penalties, costs and

> expenses, statutory or otherwise, for all acts properly performed by [E.F.M.] pursuant to the instructions of the owner. (emphasis added).

Accordingly, pursuant to Provision 2 of the Agreement, to the extent Plaintiff did any work at the Premises in service of the building (which the Edelstein Defendants contest), he was Cloister's employee. Further, pursuant to Provisions 2 and 5 of the Agreement, Cloister is obligated to indemnify and provide the Edelstein Defendants with a defense in this litigation.

Because at all relevant times, E.F.M. acted on behalf of the Cloister, in its answer, E.F.M. and its principles Florence and Michael Edelstein included a cross-claim for indemnification against Cloister. In response to Cloister's motion to dismiss the cross-claim pursuant to Fed. R. Civ. P. 12(b)(6), the Edelstein Defendants filed an amended answer that incorporated the terms of the Agreement. *See* Plaintiff's Exhibit 4.  Cloister's motion to dismiss should be denied. The clear and unambiguous terms of the Agreement, from which Cloister benefited for over 14 yeras, provides that the Edelstein Defendants are entitled to a defense and to be indemnified and held harmless against Plaintiff's claims for unpaid wages.

## STANDARD OF REVIEW

When assessing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the Court's task is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Guerrero v. Soft Drink & Brewery Workers Union*, 2016 WL 631296, at *5 (S.D.N.Y. Feb. 16, 2016). When assessing a motion to dismiss "the Court accepts the nonmovant's allegations as true and draws all reasonable inferences in the nonmovant's favor." *Pfizer Inc. v. McNeil-PPC, Inc.*, 183 F. Supp. 3d 491, 493 (S.D.N.Y. 2016). In order to withstand a motion to dismiss, "a plaintiff must allege 'enough facts to state a claim

5

to relief that is plausible on its face.'" *Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., In*c., 652 F. Supp. 2d 463, 471 (S.D.N.Y. 2009).

When assessing a motion to dismiss, "[t]he issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims.'" *LaSalle Bank Nat. Assoc. v. Citicorp Real Estate, Inc.*, 2003 WL 21671812, at *1 (S.D.N.Y. July 16, 2003). The Supreme Court explains that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 471 (S.D.N.Y. 2009), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

## ANALYSIS

I.   *The Cloister Defendants have raised a claim for* <u>*indemnification under the Agreement*</u>*.*

Contrary to the Cloister Defendants' assertions, the Edelstein Defendants have asserted a claim for contractual indemnification under the Agreement. *See* Agreement (Exhibit C) at ¶¶2 and 5; Amended Answer (Exhibit 4). It is well established that "[a] party is entitled to full contractual indemnification provided that the intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances." *Perez v. Reade*, 2011 WL 96837, at *3 (E.D.N.Y. Jan. 11, 2011); *see also Hogeland v. Sibley, Lindsay & Curr Co.*, 42 N.Y.2d 153, 159, 366 N.E.2d 263, 266 (1977) ("It suffices that the agreement between the parties connotes an 'intention to indemnify (which) can be clearly implied from the language and purposes of the entire agreement.'"); *Kurek v. Port Chester Hous. Auth.*, 18 N.Y.2d 450, 456, 223 N.E.2d 25, 27 (1966) ("The right of the Authority, under these

circumstances, to recover indemnification on the basis of a contractual provision, depends upon the intent of the parties and the manner in which that intent is expressed in the contract.").

In this action, the Agreement evidences an unmistakable intent of Cloister to provide a defense, and to indemnify and hold the Edelstein Defendants harmless in this wage and hour litigation. Particularly, provision 2(a) of the Agreement provides, in relevant part, that:

> **2. Services to be performed by Agent.** Agent shall perform the following services:
>
> (a) Cause to be interviewed, screened, employed, subject to [Cloister]'s prior approval, all person necessary to be employed in order to properly maintain and operate the Building. **All such employees in or about the Building are hereby declared to be employees of [Cloister] and not of [E.F.M.], and [Cloister] at its cost and expense shall defend any suit brought against [Cloister] or [E.F.M.] on account of the operation or maintenance of said property...and [Cloister] shall hold harmless and fully indemnify [E.F.M.] for any loss to [E.F.M.] on account thereof.** (emphasis added)

Further, provision 5 of the Agreement provides, in relevant part, that:

> **[Cloister] will indemnify [E.F.M.] against and hold [E.F.M.] harmless from: (a) any liability, damages, costs and expenses (including reasonable attorney's fee) sustained or incurred for injury to any person or property in, about and in connection with the Building, from any cause whatsoever**, unless such injury shall be caused by [E.F.M.]'s own willful misconduct or failure to comply with its obligations hereunder, (b) any liability, damages, penalties, costs and expenses, statutory or otherwise, for all acts properly performed by [E.F.M.] pursuant to the instructions of the owner. (emphasis added).

Here, the language of the Agreement is clear and unambiguous. The Agreement provides that to the extent that E.F.M. procured any person to complete maintenance on the building, that person would be considered an employee of Cloister, not E.F.M. The Agreement further provided that Cloister would provide E.F.M. with a defense in any suit brought against Cloister or E.F.M. on account of the operation of the building, and indemnify and hold E.F.M. harmless

7

against any judgment entered against E.F.M. Here, a plain reading of the text of the indemnification provisions of the Agreement, evidences a clear and unmistakable intent that Cloister would defend, indemnify and hold E.F.M. harmless in any action brought by any person employed to maintain the building. This action, which is filed by a person who allegedly completed maintenance on the building, for unpaid wages allegedly earned while maintaining the building, clearly falls within the scope of the indemnification provisions of the parties' Agreement. Further, as set forth below because none of the allegations raised in Cloister's motion to dismiss undercut the clear and unmistakable intent for the Cloister to indemnify E.F.M. in this action, and because, as explained below, none of the arguments raised by the Cloister present a defense to the enforceability of the Agreement, Cloister's motion to dismiss the cross-claim must be denied.

II.   *Edelstein Defendants' cross-claim for contractual indemnification against Cloister is not barred by the* <u>*FLSA and New York Labor Law*</u>.

Contrary to the Cloister Defendant's allegations, contractual provisions for indemnification are enforceable, even for claims raised under the FLSA and NYLL. For example, in *Bogosian v. All American Concessions*, the Court granted the Restaurant Association summary judgment for its claim for indemnification against the United States Tennis Association under a contractual indemnification provision, after the Restaurant Association entered into a settlement with the plaintiffs for unpaid wages under the FLSA and NYLL. *See Bogosian v. All American Concessions*, 2011 WL 4460362 (E.D.N.Y. Sept. 26, 2011). In granting the Restaurant Association summary judgment, the Court determined that:

> the indemnification clause applies to require All American to indemnify Restaurant on the merits. <u>It is enforceable and unambiguously expresses the intent of the parties to require All American to indemnify Restaurant for liabilities</u>, including

> attorneys' fees, arising out of claims involving All American's conduct, such as plaintiffs' claims that All American failed to pay wages required under federal and state law. (emphasis added).

*Bogosian,* 2011 WL 4460362, at *4.[2]

Likewise, in *Amaya v. Garden City Irr., Inc.*, 2011 WL 564721, at *4 (E.D.N.Y. Feb. 15, 2011), the Court enforced a surety agreement requiring the insurer pay a settlement for unpaid wages under the FLSA and NYLL. Additionally, in *In re FPSDA I, LLC*, 2012 WL 6681794, at *9 (Bankr. E.D.N.Y. Dec. 21, 2012), *as corrected* (Dec. 26, 2012), the bankruptcy court found that "[n]o court seems to have held that the FLSA and NYLL *expressly* prohibit those found liable thereunder to receive indemnification from their employers or from third parties." *See also Paganas v. Total Maint. Sol., LLC*, 2016 WL 7048034, at *14 (E.D.N.Y. Dec. 5, 2016) (in which the Court remarked that it had denied a third-party defendant's motion to dismiss a claim for contractual indemnification arising out of a claim for unpaid wages under the FLSA and NYLL).

### A. Cloister's Cases Do Not Apply.

By contrast, the cases relied upon by Cloister to allege that contractual indemnification is not permitted for FLSA and NYLL claims are distinguishable and of no consequence to the matter at bar. Particularly, in *Herman v. RSR Sec. Servs.*, 172 F.3d 132 (2d Cir. 1999), the only issue before the Court was whether an employer could maintain a common law claim for indemnification against its own employees who were supervisors, and classified as employers, for any unpaid wages. The Court found the indemnification against one's own employees

---

[2] The Indemnification Clause at issue in *Bogosian* stated:

> [All American] agrees to defend, indemnify and hold [Restaurant] and [USTA] harmless from and against any and all claims, expenses, loss or liability whatsoever, including court cost and attorneys' fees, arising out of or in connection with the act or omissions of [All American], its employees and agents. This provision shall survive the termination of [the Contract].

*Bogosian*, 2011 WL 4460362, at *3.

violates the FLSA. The holding in *Herman*, is inapplicable to this action because the holding is silent about contractual claims for indemnification against third-party corporations who are not employees.

Likewise, in *Flores v. Mamma Lombardis of Holbrook, Inc.*, 942 F. Supp. 2d 274, 278 (E.D.N.Y. 2013), the Court rejected a claim for "contribution from *employees* for any damages that might ultimately be assessed for the failure to pay minimum wage and/or overtime compensation." (emphasis added). Cloister's citation to *Fernandez v. Kinray, Inc.*, 2014 WL 7399303, at *11 (E.D.N.Y. Dec. 30, 2014), is also inapplicable because this decision makes no reference to indemnification.

Additionally, Cloister's reliance on *Gustafson v. Bell Atl. Corp.*, 171 F.Supp. 311 (S.D.N.Y. 2001) is likewise misplaced. Contrary to Cloister's allegations, *Gustafson* is factually distinguishable from the case at bar. In *Gustafson*, a chauffeur filed a claim against Bell Atlantic, alleging that he deserved benefits and overtime premiums under the FLSA and NYLL because he had been improperly classified as an independent contractor. *Id.* at 317. As part of the improper classification, Bell Atlantic had required Gustafson to create his own corporation. Bell Atlantic then entered into a contract with Gustafson's corporation, which included an indemnification provision. Gustafson was the sole owner, officer and employee of this corporation. When Gustafson filed a claim for unpaid benefits and overtime, Bell Atlantic filed a cross-claim for indemnification against Gustafson's corporation (which Bell Atlantic required him to form). The Court found that the indemnification provision was not enforceable because it was being used against the same employee who filed a claim for unpaid overtime wages. This was similar to the parties in *Herman* and *Flores*, where the employer filed a counterclaim for indemnification against their own employees who acted as supervisors. In *Gustafson*, the Court

10

rejected the employers' claims for indemnification and contribution, under the theory that in both actions the claims for indemnification would cause the inequitable result of requiring the employer's own employees to have to contribute and indemnify the employer for their own unpaid wages for which they had filed the action. This inequitable result goes against the spirit and policy behind the FLSA and NYLL, and is factually distinguishable from the matter at bar.

B. <u>The Indemnification Provisions Are Enforceable</u>.

However, in this proceeding, as in *Bogosian*, *Amaya*, *FPDSDA I* and *Paganas*, the Edelstein Defendants' claim for contractual indemnification is against another corporate entity – Cloister – a co-employer, not an employee. Accordingly, the inequitable result of having an aggrieved employee potentially responsible for his own unpaid wages, which was the issue in *Herman, Flores* and *Gustafson*, is not at issue in this action because the Edelstein Defendants' claims are against another corporate entity employer, not related to the Plaintiff. Accordingly, this case is akin to the factual situations in *Bogosian*, *Amaya*, *FPDSDA I* and *Paganas,* and the Edelstein Defendants may maintain their claim for contractual indemnification against Cloister, for claims arising out of the FLSA and NYLL.

III. *Cloister Cannot Be Absolved of their* <u>*Obligations under the FLSA and NYLL*</u>.

Cloister attempts to absolve themselves from any liability under the FLSA and NYLL by alleging that the Edelstein Defendants had complete control over the Cloister Board during all relevant periods of time. However, this allegation is patently incorrect. Initially, it is noted that Leichter did not even reside at the Premises until 2014, and was not a member of the Board until January 2016. Accordingly, Leichter is unable to attest to the state of the Cloister Board prior to January 2016, and cannot testify to any of the day-to-day operations of the Premises until 2014.

Therefore, her unsubstantiated statements regarding the control of the Cloister Board are without any basis in fact, and should not be considered by this Court.

Further, the documentary evidence annexed to the Declaration of Ronald Edelstein demonstrates that Leichter's inflammatory statements about the Edelstein Defendant's control of the Cloister Board are patently false. Pursuant to the terms of the Offering Plan, Florence and Michael Edelstein, as partners in the Sponsor, could not hold a controlling interest in the cooperative corporation indefinitely. Indeed, the last amendment to the offering plan in which the Edelstein Defendants are listed as having a controlling interest in the Cloister Board was in 1992. *See* Exhibit B. Further, the Meeting Minutes from 2002 (Exhibit D) and the amendments to the offering plan from 2005 through 2016 (Exhibit B) affirmatively state that the Edelstein Defendants (as Sponsor) did not hold a controlling interest in the Cloister Board. Accordingly, when the Agreement was executed, and at all times alleged in Plaintiff's Complaint, the Edelstein Defendants did not hold a controlling interest in the Cloister Board.

Further, Leichter's allegations concerning E.F.M.'s role in processing Cloister's payroll completely ignores the portion of Section 2(a) of the Agreement, which provides, in relevant part, that:

> **2. Services to be performed by Agent.** Agent shall perform the following services:
>
> (a) Cause to be interviewed, screened, employed, subject to [Cloister]'s prior approval, all person necessary to be employed in order to properly maintain and operate the Building. <u>All such employees in or about the Building are hereby declared to be employees of [Cloister] and not of [E.F.M.], and [Cloister] at its cost and expense shall defend any suit brought against [Cloister] or [E.F.M.] on account of the operation or maintenance of said property…and [Cloister] shall hold harmless and fully indemnify [E.F.M.] for any loss to [E.F.M.] on account thereof.</u> (emphasis added).

Additionally, provision 5 of the Agreement provides:

12

> [Cloister] will indemnify [E.F.M.] against and hold [E.F.M.] harmless from: (a) any liability, damages, costs and expenses (including reasonable attorney's fee) sustained or incurred for injury to any person or property in, about and in connection with the Building, from any cause whatsoever, unless such injury shall be caused by [E.F.M.]'s own willful misconduct or failure to comply with its obligations hereunder, (b) any liability, damages, penalties, costs and expenses, statutory or otherwise, for all acts properly performed by [E.F.M.] pursuant to the instructions of the owner. (emphasis added).

Therefore, under the terms of the Agreement, Plaintiff as a person who allegedly worked at the Premises and assisted in its maintenance was, under the terms of the parties' Agreement, Cloister's employee – not E.F.M.'s employee. Further, under the terms of the Agreement, Cloister agreed to provide E.F.M. with a defense and indemnify E.F.M. under any suit brought against either E.F.M. or Cloister due to the operation and maintenance of the Premises.  Further as Plaintiff's employer, who received the benefit of Plaintiff's alleged efforts to maintain the Premises, Cloister may not, as a matter of public policy, contract away and disavow their obligations under either the FLSA or NYLL. *See Gustafson*, 171 F.Supp.2d at 311.

As to Cloister's allegations that the failure to pay Plaintiff was willful, these allegations are patently untrue. Further, any allegations about willfulness are of no consequence in determining whether the Edelstein Defendants have stated a claim for contractual indemnification.  The Edelstein Defendants having produced the Agreement which includes two indemnification provisions which provide for indemnification in claims arising out of the maintenance and day-to-day operations of the Premises, have stated a claim for contractual indemnification. To the extent Cloister attempts to disavow any liability under the Agreement because of the Edelstein Defendants' alleged willful violation of the FLSA and NYLL, such a determination cannot be completed until after factual discovery has been completed, and is inappropriate inquiry at this point in the litigation. *See LaSalle.*, 2003 WL 21671812, at *1

(when assessing a motion to dismiss, "[t]he issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims.'") Particularly, where as in this action, there are significant questions as to whether Plaintiff was an employee and what work he actually completed in the six years prior to filing the litigation. Accordingly, because a plain reading of Paragraphs 2 and 5 of the Agreement provide that the Cloister would indemnify and provide a defense to the Edelstein Defendants in any action arising out or related to the maintenance and day-to-day operations of the Premises, the Edelstein Defendants have raised a claim for contractual indemnification against Cloister.

IV.  *Edel Family Management is E.F.M. Realty Corp. and remains in existence.*

The Cloister Defendants are incorrect that E.F.M. Realty Corp. is no longer an existing entity. As set forth in the Declaration of Ronald Edelstein, E.F.M. Realty Corp. was the d/b/a and trade name for **E**del **F**amily **M**anagement **C**orp., which was in existence at the time the Agreement was executed and remains an active corporate entity.

The printout for E.F.M. Realty Corp., from the New York Department of State, which Cloister presents in support of the Motion, is for a separate and distinct entity, which is not owned or controlled by the Edelstein Defendants. Indeed, Florence and Michael Edelstein filed an action Sheldon Farber, for infringing on E.F.M.'s trade names and deceptive business practices, because Sheldon Farber nefariously incorporated E.F.M. Realty Corp. in retaliation for an eviction proceeding. *See Edelstein v. Farber*, Index No. 602624/2001 (the "Trademark Action"). In the Trademark Action, Judge Madden determined that "[i]n July and September 1999, [Sheldon Farber] incorporated E.F.M. Realty Corp. and E.F.M. Realty Management Corp., respectively. In November 2000, [Sheldon Farber] incorporated E.F.M. Management Corp. … There is no evidence in the record that [Sheldon Farber] used the incorporated entities to conduct

business or to provide any services." *See* Exhibit D (emphasis added).  Judge Madden further determined that "[f]or the past 15 years [Florence and Michael Edelstein] have managed about 26 real estate properties in New York City under the names E.F.M. Realty Corp. and E.F.M. Management Corp., with the letters EFM representing Edelstein Family Management**.** " *See* Exhibit D (emphasis added).

Therefore, it has already been determined by the New York State Supreme Court that the dissolved E.F.M. Realty Corp., which is referenced by Cloister, was not in fact Edel Family Management Corp., and it has already been determined that the dissolved E.F.M. Realty Corp. never conducted any business or contracted for any services. Accordingly, the dissolved E.F.M. Realty Corp. relied upon by Cloister in an attempt to disavow their obligations, is of no consequence to the Edelstein Defendants' cross-claim.

Additionally, Cloister's argument that the Agreement is unenforceable because E.F.M. Realty Corp. was not a registered d/b/a or tradename of E.F.M. at the time the contract was executed is likewise unpersuasive. Under the doctrine of incorporation by estoppel, "[o]ne who contracts with or otherwise deals with an entity as a corporation thereby admits that it is a corporation and is estopped to deny the corporate existence in any action arising out of such contract or dealing." *Nemard Const. Corp. v. Deafeamkpor*, 21 Misc.3d 320, 323 (Sup. Ct. Bronx Cnty. 2008); *see also JCL Properties, LLC v. Equity Land Developers, LLC,* 102 A.D.3d 745, 746 (2d Dept. 2013) ("the doctrine of incorporation by estoppel precludes the defendant from using the plaintiff's lack of incorporation as a sword to establish liability after it allegedly benefitted from its agreements with the plaintiff.")

Here, Cloister does not deny that the Edelstein Defendants acted as their managing agent pursuant to this agreement for nearly fourteen (14) years. The long held belief that Edel Family

Management was the managing agent is evidenced by the fact that in the State Court Action filed by the Cloister in 2016 against its recently resigned property manager, Cloister named **E**del **F**amily **M**anagement Corp., *not* E.F.M. Realty Corp. *See* Cloister's Exhibit 1. In support of their motion for a preliminary injunction in the State Court Action, Cloister represented to the New York State Supreme Court that Edel Family Management Corp. had acted as managing agent since 1986. *See* Exhibit G. In the State Court Action, the Hon. Nancy Bannon, J.S.C. found that "[Edel Family Management Corp.] has been retained as [Cloister]'s managing agent." *See* Exhibit F annexed to the Edelstein Declaration.

Cloister cannot have it both ways. They cannot accept the benefits of E.F.M.'s labor under the Agreement for nearly fourteen years, pay E.F.M. for managing the Premises pursuant to the terms of the Agreement for over 14 years, allege in the State Court Action that E.F.M. was the managing agent at the Premises for thirty (30) years (1986-2016), and then, to avoid their obligations, allege that the Agreement, which provides for property management services, is not enforceable because E.F.M. utilized a trade name when it executed the Agreement. This is exactly the kind of inequitable result, which the Courts attempt to rectify when they apply the principle of incorporation by estoppel. It is for this reason that Cloister is estopped from raising any allegations that E.F.M. violated the corporate form as a means to disavow their obligations under the Agreement, which they benefitted from for fourteen (14) years.

V. *The Contract is Not Voided By New York Gen. Obl. L. 5-903.*

Cloister's assertions that the Agreement is void and unenforceable under Gen. Obl. L. § 5-903 are incorrect and are a thinly veiled attempt to avoid their obligations under the Agreement to which they received a benefit under for over a decade. As an initial matter, by its terms, Gen. Obl. L. §5-903 invalidates a "*provision* of a contract for service, maintenance or repair to or for

any real or personal property which states that the term of the contract shall be deemed renewed for a specified additional period." (emphasis added). Accordingly, Gen. Obl. L. §5-903 does not invalidate the entire Agreement; at most, Gen. Obl. L. may invalidate the automatic renewal provision of the Agreement.

Without the automatic renewal provision, either party had the right to cancel the agreement at any time after the initial term of the Agreement expired. *See, e.g., Healthcare I.Q. LLC v. Tsai Chung Chao*, 118 A.D.3d 98, 103 (1st Dept. 2014) (finding that a doctor who was not timely notified of the automatic renewal provision in the contract, had the right to cancel the agreement at any time; however, the doctor was responsible to pay for the service contract while he was in fact receiving services.); *Concourse Nursing Home v. Axiom Funding Group*, 279 A.D.2d 271, 271 (1st Dept. 2001) (finding that under a similar provision of the Gen. Obl. L. § 5-901, which deals with the automatic renewal provision of lease agreements, the Court held that while the relevant New York Statute rendered the automatic renewal provision in a lease agreement unenforceable, "the cited statute does not operate to entitle plaintiff to continue knowingly and willingly to accept the benefit of the leased equipment without compensating defendant lessor.")

Cloister does not dispute (and in fact in the State Court Action affirmative represented) that E.F.M. acted as the managing agent for the Premises until February 29, 2016, and Cloister does not dispute that it paid E.F.M. for these services (as required by the terms of the Agreement) for nearly fourteen (14) years. Accordingly, the Agreement remained in full force and effect until February 29, 2016, which is during the period of time covered by this litigation. Accordingly, Gen. Obl. L. §5-903(2) does not render the Agreement unenforceable, or absolve Cloister, who benefited from the Agreement throughout the time period covered by this

litigation, from their obligations to indemnify and hold the Edelstein Defendants harmless from any claim filed by Plaintiff.

<u>**CONCLUSION**</u>

The Edelstein Defendants have stated a claim for contractual indemnification against Cloister. The plain and unambiguous terms of paragraphs 2 and 5 of the Agreement, which is attached and cited in the Edelstein Defendants' Amended Answer, provides that Cloister would provide the Edelstein Defendants with a defense and indemnify the Edelstein Defendants for any claims arising out of or related to the Edelstein Defendants' role as managing agent and management of the day-to-day operations of the Premises. Further, Cloister having benefitted from the Agreement, and any labor allegedly provided by the Plaintiff, may not now disavow their obligations under the Agreement, or any obligation to pay Plaintiff's wages. The Edelstein Defendants should be permitted to enforce their rights under the Agreement. Therefore, Cloister's motion should be denied, and the Edelstein Defendants' cross-claim for contractual indemnification against Cloister should not be dismissed.

Dated:       March 20, 2017
             Uniondale, New York

                                    Respectfully submitted,

                                    */s/ Gregory S. Lisi*
                                    Gregory S. Lisi, Esq.
                                    Lisa M. Casa
                                    FORCHELLI, CURTO, DEEGAN,
                                    SCHWARTZ, MINEO & TERRANA, LLP
                                    *Attorneys for Edelstein Defendants*
                                    The OMNI
                                    333 Earle Ovington Blvd., Suite 1010
                                    Uniondale, New York 11553
                                    Telephone: (516) 248-1700